THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD L. KNOWLES *et al.*, Defendants-Appellants.

Fifth District   No. 77-292

Opinion filed September 28, 1979.

Michael J. Rosborough, of State Appellate Defender's Office, of Mt. Vernon, and John Wimmer, law student, for appellants.

Nicholas G. Byron, State's Attorney, of Edwardsville (Raymond F. Buckley, Jr., and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Following a jury trial in the circuit court of Madison County, codefendants Richard Knowles and Donald Jenkins were both found guilty of two counts of rape and two counts of deviate sexual assault. The court subsequently sentenced Knowles to four concurrent terms of five to 10 years' imprisonment and Jenkins to four concurrent terms of four to eight years' imprisonment; however, 11 days after these sentences were

imposed, the trial court, acting on a State's motion seeking their modification, altered the sentences so as to cause the terms of imprisonment imposed upon defendants for deviate sexual assault to run consecutive to the terms of imprisonment for rape.

In this appeal defendants raise the following issues: (1) whether defendants were denied the effective assistance of counsel; (2) whether the conduct and statements of the prosecutors during trial were so prejudicial and inflammatory as to deny defendants a fair trial; (3) whether the trial court improperly restricted and limited cross-examination by the defendants; (4) whether certain testimony elicited by the prosecutors from defense witnesses during cross-examination was improperly admitted; (5) whether the trial court erred in giving an instruction on accountability over the objection of defendants; and (6) whether the court's alteration of defendants' original sentences upon the State's motion was error.

We need not set out the facts of this case in detail since this court has already done so in *People v. Muellner* (1979), 70 Ill. App. 3d 671, 388 N.E.2d 851, wherein we reviewed the conviction of Knowles and Jenkins' third codefendant, Mark Muellner. It is sufficient for our purposes at this point to state that the acts of rape and deviate sexual assault which form the basis of the present charges were allegedly committed upon two young women, 18 years of age, by a group of nine young men, which included defendants, during the late evening and early morning hours of August 6 and 7, 1976, at a place in Madison County known as Choteau Island.

The gist of the complainants' testimony was that they encountered a carload of men at a service station in St. Louis, Missouri, when they stopped to use its restroom. Defendant Knowles and another man disengaged themselves from the group, and without being invited to do so got into the complainants' automobile and refused to leave. They then directed the women to drive to a nearby park where they would meet the men in the other car. In the next hour, the complainants were directed to and did drive these men to several places, including several service stations where complainants could have sought help but did not because they "didn't know what would happen if they did." During the course of this driving, the group entered Illinois and eventually stopped at Choteau Island. At this spot, each woman was dragged off by several men and forced to perform a multitude of sexual acts without her consent. The testimony of one complainant indicated that during the 4½ hours she was detained defendant Jenkins compelled her to have oral, anal and vaginal intercourse with him and that Knowles compelled her to engage in vaginal and anal intercourse. The other complainant's testimony indicated

that Jenkins forced her to have vaginal intercourse and that Knowles forced her to have vaginal and anal intercourse with him.

Four of the issues which defendants Knowles and Jenkins raise in this appeal have already been considered by this court in *People v. Muellner.* Our findings with respect to them in *Muellner* will be controlling and dispositive of them here.

Three of these common issues were and are again found to be nonmeritorious. These are: whether certain conduct and statements of the prosecutors during the evidentiary portion of the trial were so prejudicial as to deny defendants a fair trial; whether the trial court improperly restricted and limited cross-examination by the defendants; and whether the trial court erred in giving an instruction on accountability over the objection of defendants. The fourth common issue, whether the trial court erred in modifying defendants' original sentences, is meritorious and will be commented upon later in this opinion.

The issues which remain for our consideration are: whether the defendants were denied the effective assistance of counsel; whether the prosecutor's closing arguments were so prejudicial as to deny defendants a fair trial; and whether certain testimony elicited by the prosecutors from defense witnesses during cross-examination was improperly admitted. Before turning to these issues, we must comment upon the State's argument that defendants have waived these claims of error by failing to present them to the trial court in a written motion for a new trial. See *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Harrawood* (1978), 66 Ill. App. 3d 163, 383 N.E.2d 707.

■■■ The case law on waiver of issues is founded upon section 116—1(b) of our Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 116—1(b)), which requires a defendant to file a written post-trial motion within 30 days of the return of the verdict. The general rule is that the failure by a defendant to raise an issue in a written motion for a new trial constitutes a waiver of that issue as a ground for reversal on review. (*People v. Pickett.*) Although an oral motion will suffice if the State does not object, the requirement that it be in writing is mandatory if the State insists upon it. (*People v. Whitehead* (1966), 35 Ill. 2d 501, 221 N.E.2d 256; *People v. Flynn* (1956), 8 Ill. 2d 116, 133 N.E.2d 257.) Moreover, the failure to file any post-trial motion constitutes a waiver of all errors raised on appeal. *People v. Hammond* (1977), 48 Ill. App. 3d 707, 362 N.E.2d 1361.

■■ All of these rules have some relevance to the positions of the current defendants. The facts with respect to defendant Jenkins are as follows. On June 2, 1977, Jenkins appeared before the court for sentencing. Prior to sentencing, Jenkins' counsel, who also represented Muellner, sought permission and was allowed to make an oral post-trial motion on behalf of his clients. Defense counsel made a rather lengthy argument in support

of his motion. The State then objected to the motion, stating that it was impossible for it to make an adequate response, and moved that defendants Jenkins and Muellner be required to file a written post-trial motion. The court did not rule on this motion but instead denied the defendant's post-trial motion, stating that it was doing so after reviewing its trial notes and the evidence in the cause. Upon consideration of these extraordinary circumstances, this court in *Muellner* addressed the merits of the contentions, expressing grave doubts as to whether the State's objection or insistence that the motion be in writing was effective so as to require such a filing to preserve claims of error when such objection was made after the defense motion was made and completed. (*Muellner*, 70 Ill. App. 3d 671, 679-80, 388 N.E.2d 851, 857-58.) For the same reason, we must address the merits of defendant Jenkins' contentions here.

At this same hearing, defendant Knowles' counsel stated that he would refrain from making an oral post-trial motion until after Knowles had been sentenced. However, counsel neither followed through on this intention nor filed a written post-trial motion on behalf of his client. Ordinarily, we would be required to find that defendant Knowles had waived all errors raised on appeal under the rule of *Hammond*; however, in this case other considerations dictate that we not do so.

■ On appeal, Knowles contends that he was denied the effective assistance of counsel. This claim is based in part upon his counsel's failure to file a post-trial motion. Where a claim of ineffective assistance of counsel is based upon counsel's failure to file a post-trial motion, consideration of the trial errors alleged on appeal is compelled to determine whether any such contentions are of substantial merit. (*People v. Lamparter* (1977), 56 Ill. App. 3d 823, 371 N.E.2d 997; *People v. Greenlee* (1976), 44 Ill. App. 3d 536, 358 N.E.2d 649; see also *People v. Bailey* (1976), 42 Ill. App. 3d 638, 356 N.E.2d 410.) This review is required since a counsel's failure to assert the right of a defendant to a new trial following a trial where plain and grievous error was committed amounts to ineffective assistance of counsel. (*People v. Lamparter*.) Consequently, we will address the merits of Knowles' contentions as well as Jenkins'.

■ Defendant Jenkins' first contention is that he was denied the effective assistance of counsel because his attorney labored under a *per se* conflict of interest. He argues that such a conflict existed because his retained counsel also served as a part-time assistant public defender at a time when another part-time assistant represented an accomplice who was granted immunity. This claim of error rests entirely upon the premise that defendant Jenkins and the accomplice, Robert Patania, must be deemed to have been represented by a single attorney since both of their attorneys were part-time assistant public defenders at the time Patania obtained immunity from prosecution for these offenses. Since this premise is not

warranted under the facts of this case, Jenkins' first contention of error is without merit. Although this court has held that for the purpose of conflict of interest analysis it must take the view that codefendants are represented by a single attorney where the public defender's office has been appointed to represent them at trial (*People v. Meng* (1977), 54 Ill. App. 3d 357, 369 N.E.2d 549; *People v. Spicer* (1978), 61 Ill. App. 3d 748, 378 N.E.2d 169, *appeal granted* (1978), 71 Ill. 2d 613), this rule is not applicable to the case at bar.

Although Jenkins' and Patania's attorneys were both affiliated with the office of the public defender as part-time assistants when Patania obtained immunity, they did not represent their individual clients in such capacity. Rather, they represented them in their capacity as private, retained attorneys. Under such circumstances, there exists no reason to treat these attorneys as alter egos of the public defender. Consequently, no position which Patania's counsel took towards his client could serve as a basis for a conflict of interest on the part of Jenkins' counsel.

Defendant Knowles' first contention is that the attorney appointed to represent him at trial did not afford him competent representation. He argues that his counsel's failure to request a continuance when he was unprepared to go to trial denied him the effective assistance of counsel. He also argues that counsel was incompetent for failing to file a post-trial motion.

■■ In order to establish the lack of competent representation by an appointed counsel, it is necessary for the defendant to clearly demonstrate actual incompetency of counsel, as reflected by the manner of carrying out his duties as a trial attorney, and substantial prejudice resulting therefrom, without which the outcome would probably have been different. (*People v. Logue* (1970), 45 Ill. 2d 170, 258 N.E.2d 323.) After examining the record, we cannot find any evidence of incompetence or unpreparedness in the manner in which Knowles' counsel carried out his trial duties.

■■ Although it is true, as noted by defendant, that his counsel, who was not involved in a previous trial of this cause which resulted in a hung jury, did not receive a transcript of the prior trial testimony of complainants and defendants until approximately two days before the State commenced its case, there is no indication in the record that this resulted in any unpreparedness for trial. In fact, the thorough and vigorous nature of counsel's cross-examination of the complaining witnesses tends to indicate that he was both prepared for this task and competent in his representation. Defendant raises no other matter which could be considered to be more than an error in judgment or trial strategy, neither of which can establish incompetency of counsel. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Torres* (1973), 54 Ill. 2d

384, 297 N.E.2d 142.) Moreover, as our further discussion of issues will show, counsel's failure to file a post-trial motion is not incompetence of counsel here, since none of the issues raised on appeal would have affected the defendant's convictions had they been raised in a post-trial motion. *People v. Greenlee.*

Defendant Knowles presents the connected claim that he was denied equal protection of the law by the trial court's refusal to provide him a free transcript of portions of the previous trial other than the testimony of the complainants and defendants. We cannot agree.

■ Not every refusal of a free transcript denies equal protection of the law to an indigent defendant. (*People v. Carroll* (1973), 12 Ill. App. 3d 869, 299 N.E.2d 134.) A defendant who requests but is denied a free transcript has the obligation of showing that he was prejudiced by that denial. (*People v. Carroll; People v. Gill* (1972), 7 Ill. App. 3d 24, 286 N.E.2d 516.) The only claim of prejudice which Knowles makes with respect to transcript portions not supplied to him is the possibility that counsel might have called an emergency-room physician who had examined complainants as a defense witness if he had had a copy of his prior testimony. In view of the fact that the substance of this physician's testimony was duplicated by that of two nurses who assisted him in his examination of the complainants, we cannot find that defendant was so prejudiced as to be denied equal protection of the law.

■■ Both defendants contend that they were denied a fair trial as a result of numerous alleged improper remarks made by the prosecutor in closing arguments. We cannot agree.

Most of the remarks complained of were successfully objected to by the defendants. While such measures by the court may not always cure such remarks, we believe that the impact of these remarks even when combined with that of the few improper remarks which were allowed to stand was not of such magnitude as to constitute a material factor in the defendants' convictions. (*People v. Fields* (1974), 59 Ill. 2d 516, 322 N.E.2d 33; *People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771.) Consequently, we will not disturb the jury's verdict on the basis of these remarks.

■■ ■ Defendants also contend that they were improperly dissuaded from testifying in their own behalf as a result of a surprise "threat" by the State at trial to call a potential codefendant, who had been granted immunity, as a rebuttal witness if made necessary by defendants' case. This contention is without merit since it rests upon the erroneous assumption that the State was required to disclose this rebuttal witness to them prior to trial. As a general rule, the State does not have to furnish the defense with the name and last known address of a rebuttal witness prior to trial. (*People v. Clark* (1973), 9 Ill. App. 3d 998, 293 N.E.2d 666; Ill.

Rev. Stat. 1977, ch. 38, par. 114—9(a),(c).) This is true since Supreme Court Rule 412(a)(i) (Ill. Rev. Stat. 1977, ch. 110A, par. 412(a)(i)) requires the State to disclose only those persons whom it "intends to call as witnesses." As a practical matter, the State may not form the intent to call a rebuttal witness until trial when it is aware of the nature of the defendant's case. We also cannot agree with defendants that there is any significance to the fact that this proposed rebuttal witness could have offered testimony in the State's case in chief. The State need not furnish the defense with the name and address of a rebuttal witness even though part or all of his testimony would be proper as evidence in chief. (*People v. Clark.*) Moreover, we note that since this witness was one of the men who was with defendants at the time of the commission of the alleged offenses, his existence and possession of relevant testimony could not have come as much of a surprise to them.

■■ Defendants next contend that the court erred in allowing the prosecutor to cross-examine two police officers by asking them how many "facts" were related by the complainants in statements which they gave the officers prior to trial. Although it is not entirely clear what defendants' theory of error is as to these questions, it appears they believe that the reference to "facts" was made in an effort to usurp the function of the jury and to lead the defendants' witnesses into vouching for the truthfulness of the complainants. We cannot agree with this interpretation, since the closing arguments of the prosecutor indicate that the questions were asked in order to emphasize the very small number of inconsistencies between the complainants' pretrial statements and trial testimony in relation to the large number of details contained in the statements. This was an entirely proper purpose.

The defendants' final contention of error is that the trial court's alteration of their original sentences upon the State's motion was improper. As we have already indicated this contention is meritorious and controlled by our decision in *Muellner,* wherein we stated:

"Section 5—8—1(d) of the Unified Code of Corrections provides that a court may, within 30 days from the date on which sentence is imposed, '* * * reduce or modify, but shall not increase the length of a sentence * * *.' (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(d)). This section is derived in part from the American Bar Association sentencing standards (see Ill. Ann. Stat., ch. 38, par. 1005—8—1(d), Council Commentary, at 482 (Smith-Hurd 1973)) which provides that under no circumstances should the trial court be authorized to increase a term of imprisonment once it has been imposed (A.B.A. Standards, Sentencing Alternatives and Procedures, §6.1(b)(1974)). We are aware that the opposite conclusion was reached in the recent case of *People v. Hills* (1979),

71 Ill. App. 3d 461, 389 N.E.2d 873, [*leave to appeal allowed,*] in construing section 5—8—1(d) of the Code. We adopt the reasoning of the dissenting opinion that the statute means precisely what it says; namely, the trial court may within 30 days reduce the sentence imposed but may not increase the sentence.

We are unpersuaded by the State's contention that the instant defendant's sentence was not increased, but merely modified by the trial court. It is our opinion that the resentencing of defendant to consecutive terms after originally imposing concurrent sentences was in the very real sense an increase in the length of his sentence because his earliest possible parole release will necessarily be delayed to a later date in time.

While we agree with the State that consecutive sentences could have properly been imposed by the trial court in this cause, we do not agree that the State could cause the court to reconsider and increase its original sentence by presenting arguments and aggravating evidence for a more severe term where it failed to do so in the first instance. We believe that by standing mute at defendant's first sentencing hearing it was foreclosed from seeking and obtaining a second chance to persuade the court as to the 'manner and severity of defendant's deposition.' Accordingly, we vacate the defendant's second sentence and reinstate the sentence originally imposed on June 2, 1977." 70 Ill. App. 3d 671, 683-84, 388 N.E.2d 851, 861.

For the foregoing reasons we modify the judgments of the circuit court of Madison County to the extent that the sentences imposed shall be served concurrently and affirm the judgments as so modified.

Affirmed as modified.

KUNCE and KASSERMAN, JJ., concur.