RICHARD WALLER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 20, 1904.*

1. EVIDENCE—*when proof of statement out of court harmonizing with testimony is admissible.* In rebuttal of evidence intended to raise an inference that a witness has some motive for testifying falsely or that his story is a recent fabrication, proof of statements of the witness out of court harmonizing with his testimony, and made when the motive did not exist and before the effect of the statements could be foreseen, is admissible.

2. MURDER—*what sufficient proof that a wound was mortal.* The requirements of the law as to proof of the cause of death in a prosecution for murder are met where the evidence of the attending physician describes a wound which every person of average intelligence would know was mortal, even though the witness does not expressly testify it was a mortal wound.

3. CRIMINAL LAW—*when irregularity in form of a judgment will not reverse.* Irregularity of a judgment in requiring the sheriff to convey the defendant to the penitentiary "within a reasonable time" will not reverse, where there is nothing to show that the clerk and sheriff did not perform their duties promptly, as required by section 18 of division 14 of the Criminal Code, and where no harm results to the defendant from such irregularity.

4. SAME—*when affidavit as to separation of jury is not ground for new trial.* An affidavit that while the jury in a criminal case were deliberating on their verdict, in charge of two officers, one of the jurors separated from the others and went about one hundred and

fifty yards and was absent a considerable time, does not show ground for new trial, there being nothing to show the juror was not in charge of an officer, or that he had an opportunity to communicate with any one, where he went or what the circumstances were.

5. SAME—*effect where an instruction on self-defense ignores doctrine of apparent danger.* Giving an instruction which is a copy of section 149 of division 1 of the Criminal Code, and which, if standing alone, would be erroneous as ignoring the doctrine of apparent danger, is not error, where the instruction is one of a series which fairly and fully presents the law of self-defense.

WRIT OF ERROR to the Circuit Court of Saline county; the Hon. A. K. VICKERS, Judge, presiding.

M. S. WHITLEY, for plaintiff in error.

H. J. HAMLIN, Attorney General, and A. E. SOMERS, State's Attorney, for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On September 15, 1902, during an altercation with Joshua Pemberton at West End, in Saline county, the plaintiff in error, Richard Waller, when from eighteen to twenty-five feet from Pemberton, fired his revolver at him and killed Gus Mitchell, who was reclining on the porch of his mill at one side and from eight to twelve feet from Pemberton. Plaintiff in error was indicted for the murder of Mitchell, and upon a trial was found guilty and sentenced to the penitentiary for a term of eighteen years.

It is first contended that the judgment is not justified by the facts proved, which are substantially as follows: Gus Mitchell was sitting on the porch of his mill with his legs over the edge, and Joshua Pemberton was standing on the ground leaning on the porch with his elbows and talking with him. Defendant, who had been with a company that had a jug of whisky, and, according to his account, had taken two drinks, came to them and asked Pemberton whom he voted for the previous spring for

school director. Defendant and John Dean had been opposing candidates, and Pemberton replied that he voted for Dean. Pemberton testified that defendant called him a damned old rascal and kicked him on the knee. Defendant, in his testimony, denied this. Pemberton then picked up a block of water-oak two inches wide, three inches in length and one and one-fourth inches thick, and as defendant backed away from him Pemberton threw the block, striking him on the hand, or perhaps on the hand and nose, as he threw up his hand at the time. Defendant instantly drew his revolver and fired, killing Mitchell. The defense was that the shot was fired in self-defense, although defendant testified that he meant to shoot over Pemberton's head. The evidence justified the jury in finding that defendant provoked the difficulty and that he did not fire the shot in self-defense. Pemberton was a small man, weighing one hundred and twenty-two pounds and was over sixty years of age. He was not attempting to assault defendant and did not have any weapon or missile at the time the shot was fired. Defendant was about thirty-nine years old and weighed about one hundred and seventy-five pounds. He was at a safe distance and was in no danger whatever of any serious bodily harm. He testified that after throwing the block Pemberton stooped and picked up a club, but defendant also testified that he fired as quick as he could get his revolver out after he was struck by the small block, and it is quite clear from all the evidence that such was the case. The evidence justified the verdict.

The next proposition of counsel is that the court improperly permitted the People to introduce evidence in rebuttal. Various witnesses on the part of defendant testified that the witness Pemberton, in stating to them the circumstances of the affair, did not say that defendant kicked him before he threw the block. There was no evidence of any contradictory statement by Pemberton, and the testimony in question was for the purpose

of raising an inference that his testimony that he was kicked was a recent fabrication. In rebuttal the People were allowed to introduce the testimony of witnesses that at the time of the occurrence, Pemberton, in stating the circumstances, said that defendant kicked him before he threw the block. The evidence was limited to about the time of the occurrence. As a general rule, proof of statements made by a witness out of court harmonizing with his testimony is inadmissible, but where it is charged that his story is a recent fabrication, or that he has some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist or before the effect of the account could be foreseen is admissible. (*Gates* v. *People*, 14 Ill. 433; *Stolp* v. *Blair*, 68 id. 541.) It was not claimed that Pemberton had ever made any different or contradictory statement, but the attempt was to show that he had recently fabricated the story because he did not state on the prior occasions that defendant kicked him. The evidence was limited to its legitimate purpose and was properly admitted.

It is next objected that the court refused proper evidence on behalf of defendant. Henry Stucker was one of those testifying that in conversation with him Pemberton did not say anything about defendant kicking him. He was then asked if Pemberton said anything as to whom defendant shot at, and if he did not say that defendant shot at him and hit Gus Mitchell. No foundation had been laid on the cross-examination of Pemberton for this testimony, and the court sustained an objection to the questions. We do not see in what respect the testimony would have contradicted Pemberton if it had been admitted, and we think the ruling was right.

It is next contended that there was no proof of the cause of the death of Gus Mitchell. The doctor attending Mitchell testified that he was with him two-thirds of the time until his death; that he was suffering from a

gun-shot wound; that the ball entered the left side and ranged upward and to the right, passing through the peritoneum and along the intestines, and in several places passed through the coils of the intestines and passed through the stomach and upward into the back part of the right lung, and that Mitchell died. The objection is, that the doctor should have given his opinion that the wound was mortal. The evidence described a mortal wound, and the proof of the cause of death would not have been more convincing if the doctor had added his opinion. Where the facts proved are such that every person of average intelligence would know, from his own knowledge or experience, that a wound was mortal, all the requirements of the law are met.

It is also insisted that the venue was not proved. The evidence was that the shooting took place at Mitchell's mill, in West End, in Saline county, Illinois, and the venue was clearly proved.

The next point made is, that the judgment is void because it requires the sheriff to convey the defendant to the penitentiary within a reasonable time. The court is required to pronounce judgment, and section 18 of division 14 of the Criminal Code then requires that the clerk of the court shall forthwith deliver a certified copy of the judgment to the sheriff or other proper officer of the county, who shall without delay convey the convict to the penitentiary of the State and deliver him to the warden thereof. (Hurd's Stat. 1899, p. 639.) The judgment should not provide for removal within a reasonable time, but the presumption is that the clerk and sheriff performed their respective duties under the statute, and there is nothing to show that there was any delay or that the statute was not literally complied with. There was no postponement, in the judgment, of the execution of the sentence, and it was not inconsistent with the performance of their duties by the clerk and sheriff. Inasmuch as it does not appear that plaintiff in error suffered

any harm on account of the form of the judgment, it is not ground for reversal.

The next point made is, that a motion for a new trial should have been sustained because the jury were allowed to separate while deliberating on their verdict. The motion was supported by an affidavit that while the jury were deliberating on their verdict two officers were in charge of the jurors, and that one of such jurors separated from the others and went about one hundred and fifty yards and was absent from the balance of the jury for a considerable space of time. In a case of this character the jury should not be allowed to separate, while deliberating upon their verdict, under circumstances where any harm could possibly come to the defendant from the separation. (*McKinney* v. *People*, 2 Gilm. 540; *Jumpertz* v. *People*, 21 Ill. 374.) There may be circumstances, however, that would necessitate a juror being absent from the others for a time in charge of an officer, and there is nothing in the affidavit to show that the juror was not in charge of an officer all the time or that he had any opportunity to communicate with any other person. The affidavit does not state the length of time that the juror was separated from the jury, where he went or what the circumstances were, and we regard it as insufficient to justify a new trial.

Objections are made to some instructions given at the request of the People. The jury were very fully instructed, at the request of the defendant, upon every proposition of law favorable to him, including the law of self-defense, but it is insisted that the court erred in giving the ninth instruction on that subject at the request of the People. This instruction was a copy of section 149 of division 1 of the Criminal Code, and if it had been given alone, as the only instruction on the subject of self-defense, it would have been erroneous, as ignoring the doctrine of apparent danger. (*Gainey* v. *People*, 97 Ill. 270.) It is not error, however, to give such an instruction

as a part of a series of instructions fairly presenting the law of self-defense. (*McCoy* v. *People*, 175 Ill. 224.) In this case all the sections of the Criminal Code relating to homicide were given to the jury, including sections 148 and 149. The court also gave to the jury, at the request of the People, the fourteenth, fifteenth and eighteenth instructions, recognizing fully the right of self-defense in cases where the danger is only apparent, and at the instance of defendant gave the eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth and eighteenth instructions, informing the jury fully that the danger need not be real if the appearances and circumstances are such as to raise a belief of existing danger in the mind of a reasonable person. The jury were fully instructed on the subject, and could not have misunderstood that the necessity for taking life need not be actual but may be only apparent, if the apprehension of danger is reasonable and well grounded from the surrounding circumstances.

The thirteenth instruction given at the request of the People is objected to as placing the plaintiff in error in a different class from other witnesses and not requiring the jury to treat his testimony the same as that of others, and the decision in *Hellyer* v. *People*, 186 Ill. 550, is relied upon. In that case the jury were told that they were not bound to treat the defendant's testimony the same as that of the other witnesses. But the instruction in this case is entirely different. In this case the jury were told that the credibility and weight of his testimony were for them; that in testifying they might take into consideration his manner of testifying, the reasonableness or unreasonableness of his account of the transaction and his interest in the case, and they should consider his testimony and determine whether it was true or not.

We find no error in the record, and the judgment is affirmed.                                    *Judgment affirmed.*